In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-1446

ROCHE DIAGNOSTICS CORPORATION,

*Plaintiff-Appellant*,

*v.*

MEDICAL AUTOMATION SYSTEMS, INC.; GREGORY A. MENKE;
and KURT M. WASSENAAR,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-1718-SEB-DML — **Sarah Evans Barker**, *Judge*.

ARGUED MAY 9, 2011 — DECIDED MAY 24, 2011[†]

Before EASTERBROOK, *Chief Judge*, and WOOD and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Roche Diagnostics makes glu-
cose monitors and other diabetes-related products that incor-
porate software written by Medical Automation Systems
(MAS). Roche's contract with MAS entitles it to use the soft-
ware for two years after the contract's initial term (2006
through 2010) and any extension. It also gives Roche a right of
first refusal should MAS agree to sell its stock or assets to one
of Roche's competitors "during the term of this Agreement."
MAS notified Roche that it would not extend the contract af-
ter the original expiration date. Roche learned that investors in

---

[†] This opinion is being released in typescript. A printed copy will follow.

MAS were negotiating to sell their stock to Alere, Inc., which Roche considers to be a competitor. It told MAS in December 2010 that would match Alere's offer, but MAS replied that, because the transaction would not close until 2011, Roche's right of first refusal did not apply.

The contract provides for arbitration of disputes about the right of first refusal but allows either party to ask a judge for equitable relief while arbitration is ongoing. Invoking the diversity jurisdiction, Roche asked for an injunction pending arbitration. Because the merits of the dispute will be resolved by the arbitrator, we do not discuss the terms of the contract or the nature of the parties' contentions beyond the few words already written. Some of these details appear in the district court's opinion. 2011 U.S. Dist. LEXIS 18117 (S.D. Ind. Feb. 23, 2011). It is enough for now that the district court concluded—and MAS does not deny—that Roche has a reasonable chance of prevailing in the arbitration.

The district court concluded that Roche will suffer irreparable injury if Alere acquires MAS. The acquisition could undermine the value of Roche's right to use the software through 2012. The court also concluded that the difficulty of undoing a sale (soon to be followed by a merger) could reduce, if not eliminate, the value of Roche's right of first refusal. At the same time, the district judge found, enjoining the sale would cause irreparable harm to MAS and Alere by prolonging the uncertainty about who is entitled to control MAS's business. Delay could reduce the value of MAS to Alere, leading it to withdraw (or reduce the price), to the detriment of MAS's stockholders. The district judge concluded that the best way to balance these competing interests would be to allow the sale to proceed, subject to a requirement that MAS allow Roche to use the software through 2012. The district court issued an injunction implementing this decision; the injunction expires as soon as the arbitrator renders a decision (or at the end of 2012, if the arbitrator still has not acted).

Roche asked us for an injunction pending appeal. We concluded that the sale can proceed if MAS and Alere respect Roche's exclusive rights, *and* if the parties ensure that MAS is maintained as a separate firm so that the transaction can be undone and the business transferred to Roche—with its full value intact—should the arbitrator rule in Roche's favor. The hold-separate portion of our injunction sets these conditions:

1.  MAS survives the merger in its current form as an independent, though wholly or partially owned, corporate entity;

2.  There are no material changes in MAS's operations;

3.  There are no material changes in MAS's business plans;

4.  Alere does not hire any current or former employees, officers, or directors of MAS;

5.  MAS does not hire any current or former employees, officers, or directors, of Alere;

6.  No current or former employees, officers, or directors of Alere serve as directors or board members of MAS;

7.  No current or former employees, officers, or directors of MAS serve as directors or board members of Alere;

8.  MAS does not share with Alere any confidential or proprietary information regarding Roche or any other company with which MAS does business;

9.  MAS does not share with Alere any of MAS's own confidential and proprietary information except to the extent that MAS shares such information with third-parties in its normal course of business; and

10. MAS does not transfer or dispose of any material assets or make any material acquisitions.

MAS and Alere elected not to close the transaction under these conditions. We accelerated the briefing and argument of the appeal. Meanwhile the arbitration is under way: the arbitrator has allowed extended discovery and set a hearing for September. This does not seem like an expedited schedule, but none of the litigants has complained.

Appellate review of a district judge's decision balancing the harms in a proceeding requesting equitable relief is deferential. See *Ashcroft v. ACLU*, 542 U.S. 656, 664–65 (2004). MAS contends that deferential review leads straight to affirmance, because after an evidentiary hearing the district judge reached a thoughtful conclusion recognizing the injury that could be done by either closing the deal or delaying the closing. The problem with MAS's argument is that the district judge included, as an injury on MAS's side of the ledger, the harm that would be

done by delaying a final decision about whether MAS's business goes to Alere or to Roche. The district court wrote that this injury could be avoided by allowing the sale to proceed. Yet closing the sale will *not* avoid uncertainty. Until the arbitrator decides, uncertainty continues whether the sale has closed or not. The chance that the arbitrator will decide that Roche properly exercised a right of first refusal, and thus is entitled to acquire MAS, means that the final outcome cannot be known today. It is the arbitration agreement between Roche and MAS, not an injunction, that prolongs uncertainty.

Because "uncertainty" is a wash, we need to ask whether Roche or MAS faces the greater harm. The district judge said that Roche's harm is the greater, if effects of uncertainty from delay are put aside. We agree. Roche faces harm from acts that may undermine its right to use the software in connection with diabetes-related products. And it faces harm from the fact that parties to the sale of a business—whether accomplished by merger, the sale of assets, or the transfer of all stock—commonly make changes that impede any effort to restore the *status quo ante*. Often the point of the deal is to give one firm access to another's assets, including its intellectual property, and its executives too. The acquiring firm may install new managers in order to protect or enhance its investment, may move assets to or from the acquired business in order to achieve economies of scope (often called synergies), and may alter the acquired firm's business plans substantially.

A careful study concluded that changes of this kind prevent divestiture that would solve antitrust problems. See Kenneth G. Elzinga, *The Antimerger Law: Pyrrhic Victories?*, 12 J.L. & Econ. 43 (1969). A recognition that eggs can't be unscrambled underlies the Hart-Scott-Rodino Antitrust Improvements Act, 15 U.S.C. §§ 15c–15h, 18a, which entitles antitrust enforcers to notice of impending sales and mergers, so that anticompetitive acquisitions can be tackled while effectual relief is still possible. And the difficulty of restoring an acquired firm to its original independent situation is why we conditioned closing on the defendants' willingness to hold the firms' assets and management separate until the arbitrator could make a decision. Their unwillingness to accept these conditions implies a desire to take one or more of the steps that would make the deal hard, if not impossible, to reverse.

An irreversible transaction would defeat Roche's right of first refusal, should the arbitrator vindicate Roche's position. MAS does not contend that this loss could be compensated in damages. It would be difficult indeed to know just how much more MAS is worth to Roche than the price it must pay to match Alere's offer. MAS concedes that irreparable injury, and the other conditions for injunctive relief, see *Winter v. NRDC, Inc.*, 555 U.S. 7 (2009), have been established. Its only argument is that the district court did not abuse its discretion because the harms are in equipoise given the loss it will suffer if uncertainty continues. Since the uncertainty will continue until the arbitrator's decision—when any injunction will expire—the harms are one-sided. Roche is entitled to effective relief until the arbitrator decides.

This court's hold-separate order protects Roche's interests; it has not asked for more. After oral argument, however, MAS asked us to modify two of the conditions, which it said obstruct the transaction even though Alere is willing to accept the other eight.

Condition 6 provides: "No current or former employees, officers, or directors of Alere [may] serve as directors or board members of MAS." This not only prevents Alere from making substantial changes but also prevents it from displacing MAS's current managers, officers, and directors, whose continuing presence may be essential should MAS later be transferred to Roche. What worries Alere is that, after closing, some promises in the acquisition agreement would cease to operate. MAS promised Alere that before closing it would not incur liabilities exceeding $100,000 except in the ordinary course of business; would not allow assets to become subject to a lien; would not sell new stock or acquire any new business; would not dispose of its intellectual property; and so on. These are normal terms of an acquisition agreement. The promises expire when the transaction closes, because the buyer can install its own personnel to ensure that the business is well operated. If the sale proceeds but condition 6 applies, however, Alere's investment will be at risk: MAS's old shareholders will have their money and may neglect their duties or take imprudent risks. Certainly their competitive edge will be dulled.

The way to handle this problem is not, however, to modify condition 6. It is to add a new requirement, condition 11: "If Alere acquires MAS subject to the first 10 conditions, then

MAS remains bound by all promises in §7.7 of the acquisition agreement for as long as this injunction remains in force." All of the matters that concern Alere are in §7.7, so this additional requirement should ensure that the value of MAS does not deteriorate while the arbitrator is adjudicating Roche's contentions. And because §7.7 is in force today, its continuation pending the resolution of the arbitration cannot injure Roche.

Alere's second concern arises from condition 9, which limits the information that MAS can provide. Alere believes that, after acquiring all of MAS's stock, it will be required to consolidate its financial statements with those of MAS, something that would not be possible if MAS can provide Alere with no more information than MAS releases to the public. The SEC's Regulation S–X generally requires consolidation if a reporting company such as Alere owns a majority or some other company's stock. See 17 C.F.R. §§ 210.3–01, 210.3–02, 210.3–03. But generally differs from always. Rules of the Financial Accounting Standards Board permit a firm not to prepare consolidated financial statements when "control does not rest with the majority owner". FASB Reg. §810-10-15-10(a)(1). While the hold-separate conditions are in force, control would not rest with Alere, which would not violate any statute or regulation by treating stock in MAS as an asset, rather than preparing a consolidated financial statement. Similarly, Alere's lack of day-to-day control would excuse it from changing or certifying MAS's internal financial system in order to comply with the Sarbanes–Oxley Act. This makes it unnecessary to modify condition 9.

One final matter calls for discussion. The district court did not require Roche to post a bond as a condition of the preliminary injunction that protects its contractual period of exclusivity. Nor did this court require a bond when enjoining the closing unless MAS and Alere implement the hold-separate conditions. Normally an injunction bond or equivalent security is essential. See Fed. R. Civ. P. 62(c), 65(c); *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 887–88, amended, 209 F.3d 1032 (7th Cir. 2000). Injunctions can injure litigants—MAS's investors certainly are injured by both the district court's injunction and our hold-separate order. And preliminary injunctions, which may be issued in haste, are more likely to be erroneous than injunctions issued at the close of the litigation. A party injured by an erroneous preliminary injunction is entitled to be made whole. Established doctrine has it that the damages payable to a

person injured by an erroneously issued injunction cannot exceed the amount of the bond. *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 770 n.14 (1983); *Russell v. Farley*, 105 U.S. 433, 437–38 (1882); *Coyne-Delany Co. v. Capital Development Board*, 717 F.2d 385, 393–94 (7th Cir. 1983). Judges therefore should take care that the bond is set high enough to cover the losses that their handiwork could cause. A limit of zero—the upshot of an injunction without a bond—is bound to be too low.

The reason why neither the district court nor this court required a bond is that the contract between Roche and MAS not only assigns to a court (rather than an arbitrator) the question whether to block a sale pending arbitration, but also waives both parties' entitlement to an injunction bond. By waiving the protection of an injunction bond, MAS surrendered any right to compensation should an injunction cause the deal to fall through. But judges still should take account of the risk that their deeds creates. We could, for example, set a time limit on the injunction, though this would allocate to Roche the risk that relief would expire, and the sale close, before the arbitrator is done.

We asked Roche's counsel at oral argument whether Roche is willing to compensate MAS's investors for the time value of money. Alere has offered $43 million for all shares of MAS. That price, paid at a closing in January 2011, is worth more than the same price paid (by either Roche or Alere) at a closing in January 2012. Counsel for Roche replied that the equity investors in MAS would be fully compensated for any loss they incur because of delay in receiving the purchase price, and that if Roche eventually acquires the shares it will pay the investors at least $43 million plus interest from the time the MAS–Alere deal originally was scheduled to close. We have taken that promise into account in deciding that the hold-separate order should last until the arbitrator is done—or decides that equitable relief is no longer necessary, if that is earlier. Roche has made a financial commitment to MAS's investors and must keep its word.

The judgment of the district court is modified to incorporate the 11 hold-separate conditions stated in this opinion. Alere and MAS can close their transaction if they respect both those conditions and the district court's requirement that Roche receive its unimpaired period of exclusive use of MAS's

diabetes-product software. As modified, the judgment of the district court is affirmed.